# EXHIBIT A

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BOSTON, MASSACHUSETTS

File:   A70 294 344

In the Matter of                              )
                                              )
Jose Jeremias GAMEZ FUNEZ,                    )    IN DEPORTATION
                                              )    PROCEEDINGS
Respondent                                    )

CHARGE:         Section 241(a)(2) of the Immigration and Nationality Act ("the Act")
                [8 U.S.C. § 1251(a)(2)]--Entered the United States without Inspection.

APPLICATION:    Motion to Reopen

ON BEHALF OF RESPONDENT:                        ON BEHALF OF DHS:
Stephen A. Lagana, Esq.                         Assistant District Counsel
Lagana & Associates                             Trial Attorney Unit–DHS
145 Essex Street                                JFK Federal Building, Room 425
Lawrence, Massachusetts 01840                   Boston, Massachusetts 02203

## DECISION OF THE IMMIGRATION JUDGE

On October 12, 1989, the Immigration and Naturalization Service ("the Service")[1] personally served the respondent with an Order to Show Cause ("OSC"). The OSC alleges that the respondent is a native and citizen of Honduras who entered the United States ("U.S.") at or near Brownsville, Texas on or about October 11, 1989 without being inspected by an immigration officer. As a result, it charges him with deportability pursuant to section 241(a)(2) of the Act.

The respondent was scheduled to appear before the Immigration Court in Los Fresnos, Texas on November 9, 1989; November 24, 1989; and March 14, 1990. On March 11, 1990, the respondent filed a motion requesting that venue be changed from the Immigration Court in Los Fresnos, Texas to Boston, Massachusetts because he relocated to New Hampshire. The respondent provided his new address to the Court: C/O Ms. Lourdes Suyapa Funez, 25 Cross Street, Apartment #3 in Hudson, New Hampshire 03051. On March 14, 1990, the Immigration Court in Los Fresnos, Texas granted the respondent's request for change of venue to the Immigration Court in Boston, Massachusetts ("Court").

---

[1] As of March 1, 2003, the Service has ceased to exist. Its functions, however, have been transferred to the Department of Homeland Security ("DHS").

The Court mailed to the respondent a notice of hearing, dated March 20, 1990, which was scheduled for May 1, 1990. The Court rescheduled the respondent's May 1, 1990 hearing because the March 20, 1990 notice of hearing had been improperly sent. The notice of hearing was sent to 25 Cross Street, Apartment 3 in Boston, Massachusetts instead of Hudson, New Hampshire. Subsequently, the Court sent a notice of hearing, dated May 1, 1990, which was scheduled for June 5, 1990, to the following address: C/O Ms. Lourdes Suyapa Funez, 25 Cross Street, Apartment #3 in Hudson, New Hampshire 03051. The respondent appeared in Court on June 5, 1990 without an attorney, and the Court continued the matter to September 19, 1990 so that the respondent could obtain legal representation. On September 19, 1990 the Immigration Judge was unavailable and the Court rescheduled the respondent's September 19, 1990 hearing for November 6, 1990. The Court mailed that notice to the same address as listed above. The respondent failed to appear in Court at his November 6, 1990 hearing and the Court on that date entered an in absentia order deporting the respondent to Honduras.

On April 16, 2004, the respondent filed a motion to reopen. He contends that he did not receive notice of his November 6, 1990 hearing. As a result, he requests that his deportation proceedings be reopened.

On April 29, 2004, the Service filed an opposition to the respondent's motion to reopen. It alleges that the November 6, 1990 hearing notice was sent to the address provided by the respondent. In addition, the respondent was well aware of the fact that he was in removal proceedings as he had been present at hearings in Texas in 1989. Lastly, it was not reasonable for the respondent to have waited over fourteen years to determine the status of his proceedings. As a result, it opposed reopening the respondent's deportation proceedings.

Former section 242(b) of the Act[2] provides that an alien must be "given notice, reasonable under all the circumstances of the nature of the charges against him and of the time and place at which the proceedings will be held." See INA § 242(b) (1988). Service of the OSC is proper either by personal service or by routine service; however, if an alien does not appear for his or her hearing, or acknowledge that he or she received the OSC, then service of the OSC is proper only by personal service. See 8 C.F.R. § 242.1(c) (1988). "Routine service" of the OSC is defined as service by regular mail to the person at his or her last known address. See 8 C.F.R. § 103.5a(a)(1) (2004); see also Matter of Peugnet, 20 I&N Dec. 233 (BIA 1991) (while 8 C.F.R. § 103.5a nominally applies to administrative proceedings before Service officers, its definitions of personal and routine service also clarify the use of those terms in the section governing the initiation of deportation proceedings in Immigration Courts). Where notice is sent by certified mail, the certified mail receipt must be signed and returned before the notice requirement is satisfied. See Matter of Huete, 20 I&N Dec. 250 (BIA 1991).

---

[2] Prior to June 13, 1992, § 242(b) of the Act governed all deportation proceedings. See Matter of Mancera, 22 I&N Dec. 79, n.1 (BIA 1998). From June 13, 1992 to March 31, 1997, § 242B of the Act (added by IMMACT and subsequently amended under the miscellaneous amendments to IMMACT) governed all deportation proceedings. See id. Effective April 1, 1997 (the effective date of IIRIRA), § 242B was deleted from the Act and replaced by §§ 239 and 240 of the Act relating to removal proceedings. See id.

Section 242(b) of the Act applies only to service of the OSC, and not to the service of any subsequent hearing notices. See Matter of Munoz-Santos, 20 I&N Dec. 205 (BIA 1990). For subsequent hearing notices, service by regular mail is permissible. Id. at 207. Moreover, where the Court sends the hearing notice to the last address provided by the alien, and the U.S. Postal Service does not return the notice to the Court as undeliverable, notice is proper. Id.

Time and numerical limitations do not apply to motions to reopen in absentia deportation proceedings conducted pursuant to § 242(b) of the Act. See Matter of Cruz-Garcia, 22 I&N Dec. 1155 (BIA 1999). When an alien seeks to reopen in absentia deportation proceedings conducted pursuant to section 242(b) of the Act, he or she must demonstrate reasonable cause for his or her failure to appear. See id., citing INA § 242(b).

Ordinarily, an alien must file a motion to reopen within ninety days of the date of entry of the final administrative order, or on or before September 30, 1996. 8 C.F.R. § 1003.23(b)(1). In certain cases, however, exceptions to the ninety-day filing deadline may apply. A court may rescind an in absentia order or an order entered in removal proceedings, where an alien files a motion to reopen within 180 days after the date of the order of removal, if the alien demonstrates that his or her failure to appear was due to exceptional circumstances as defined in § 240(e)(1) of the Act. 8 C.F.R. § 1003.23(b)(4)(iii). Additionally, a court may rescind an in absentia order entered in removal proceedings upon a motion to reopen filed at any time if the alien demonstrates that he or she did not receive proper notice of the hearing, or that he or she was in federal or state custody and the failure to appear was not his or her fault. Id.

A motion to reopen must state new facts that were unavailable, or could not have been discovered or presented at a former hearing. 8 C.F.R. § 1003.23(b)(3). Additionally, where a respondent files a motion to reopen for the purpose of seeking some sort of relief, he or she must include any supporting documents and/or applications with his or her motion. Id. Further, a respondent who is the subject of removal, deportation or exclusion proceedings may not submit a motion to reopen after he or she has departed from the United States. 8 C.F.R. § 1003.23(b)(1).

The Court must deny the respondent's motion for the following reasons. First, although the respondent claims that he did not receive notice for his November 6, 1990 hearing from the Court, the Court did mail the notice of hearing, dated September 19, 1990, to the address provided by the respondent when he filed his motion to change venue. See Exhibit 3. As indicated above service by regular mail of hearing notices is permissible. See Matter of Munoz-Santos, 20 I&N Dec. at 207. In addition, when the Court sends the hearing notice to the last address provided by the alien, and the U.S. Postal Service does not return the notice to the Court as undeliverable, notice is proper. Id. The U.S. Postal Service did not return to the Court the respondent's hearing notice, dated September 19, 1990, and as such, the Court finds that the notice of his November 6, 1990 hearing was properly served to the respondent at the last address he provided to the Court. Moreover, the Court previously had mailed to the respondent a notice of hearing, dated May 1, 1990, which was scheduled for June 5, 1990 to the Hudson, New Hampshire address. The respondent is deemed to have received that notice because he appeared in Court on June 5, 1990. Thus, it appears unlikely that the respondent failed to receive the

3

notice for his November 6, 1990 hearing given that it was mailed to the same address where he had received notice of his June 5, 1990 hearing.

In addition, the Court finds that the respondent has failed to provide any adequate reason to explain his failure to appear at his November 6, 1990 hearing. It appears that the respondent knowingly and intentionally failed to appear in Court on November 6, 1990. Lastly, in waiting approximately fourteen years from the date that the Court entered the in absentia order of deportation before filing a motion to reopen, the respondent fails to meet the ninety-day filing deadline for motions to reopen and no exceptions to the ninety-day filing deadline apply. The Court finds that the respondent failed to demonstrate adequately that he did not receive proper notice of his hearing and accordingly, the Court is unable to find in the respondent's favor.

Based on the foregoing, the following order shall enter:

ORDER: IT IS ORDERED that the respondent's Motion to Reopen Deportation proceedings be, and the same is hereby DENIED.

5/20/04
Date

PAUL M. GAGNON
United States Immigration Judge

# EXHIBIT B



U.S. Department of Justice

Executive Office for Immigration Review

*Office of the Chief Immigration Judge*

*5107 Leesburg Pike, Suite 2600*
*Falls Church, Virginia 22041*

                Re:    <u>JOSE JEREMIAS GAMEZ-FUNEZ</u>

                         A70 294 344

I, Christina Reyes, declare as follows:

    1. I am employed by the Executive Office for Immigration Review (EOIR) of the United States Department of Justice in the position of Paralegal Specialist.

    2. As part of my duties, I am responsible for searching the databases and records of proceedings (ROP) maintained by the EOIR including those maintained by the Immigration Courts and the Board of Immigration Appeals (BIA).

    3. I have searched the Immigration Courts and BIA's databases and ROPs for records relating to the respondent, Jose Jeremias Gamez-Funez alien registration number 70 294 344 and found the following: On November 6, 1990, the respondent was ordered deported in absentia by an Immigration Judge in Boston, Massachusetts. On April 16, 2004, the respondent's attorney, Stephen Lagana, filed a Motion to Reopen with the Immigration Judge in Boston, Massachusetts. The Immigration Judge denied that motion on May 20, 2004. On June 16, 2004, the respondent, this time represented by attorney Andrea Reid, filed a second motion to reopen with the Immigration Judge in Boston. On August 2, 2004, that motion was denied. The appeal of the Immigration Judge's August 2, 2004, decision was due by September 1, 2004.

4. To date, the BIA has not received an appeal filed by Jose Jeremias Gamez-Funez or his representative(s).

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed in:   Falls Church, Virginia

Executed by: _____   on: __10-14-04__
                (signature)                             (date)

# EXHIBIT C

U.S. Department of Homeland Security
20 Mass, Rm. A3042, 425 I Street, N.W.
Washington, DC 20529



**U.S. Citizenship and Immigration Services**

JOSE JERIMIAS GAMEZ-FUNEZ
27 CONGRESS STREET
NASHUA, NH 03062

FILE:       A94 382 519         Office: VERMONT SERVICE CENTER        Date:

IN RE:      Applicant:    JOSE JERIMIAS GAMEZ-FUNEZ

APPLICATION: Application for Temporary Protected Status under Section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254

ON BEHALF OF APPLICANT:

STEPHEN A. LAGANA
145 ESSEX STREET
LAWRENCE, MA 01841

INSTRUCTIONS:

This is the decision of the Administrative Appeals Office in your case. All documents have been returned to the office that originally decided your case. Any further inquiry must be made to that office.

Robert P. Wiemann, Director
Administrative Appeals Office

www.uscis.gov

A94 382 519
Page 2

**DISCUSSION:** The application was denied by the Director, Vermont Service Center, and is now before the Administrative Appeals Office on appeal. The appeal will be dismissed.

The applicant is a native and citizen of Honduras who is seeking Temporary Protected Status (TPS) under section 244 of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1254.

The director determined that the applicant was ineligible for TPS because the applicant failed to submit the court dispositions of his prior arrests. The director, therefore, denied the application.

On appeal, counsel states that the documents requested were previously sent, and submits copies of court documents.

Section 244(c) of the Act, and the related regulations in 8 C.F.R. § 244.2, provide that an alien who is a national of a foreign state designated by the Attorney General is eligible for temporary protected status only if such alien establishes that he or she:

(a) Is a national, as defined in section 101(a)(21) of the Act, of a foreign state designated under section 244(b) of the Act;

(b) Has been continuously physically present in the United States since the effective date of the most recent designation of that foreign state;

(c) Has continuously resided in the United States since such date as the Attorney General may designate;

(d) Is admissible as an immigrant except as provided under section 244.3;

(e) Is not ineligible under 8 C.F.R. § 244.4; and

(f) (1) Registers for TPS during the initial registration period announced by public notice in the *Federal Register*, or

    (2) During any subsequent extension of such designation if at the time of the initial registration period:

        (i) The applicant is a nonimmigrant or has been granted voluntary departure status or any relief from removal;

        (ii) The applicant has an application for change of status, adjustment of status, asylum, voluntary departure, or any relief from removal which is pending or subject to further review or appeal;

        (iii) The applicant is a parolee or has a pending request for reparole; or

A94 382 519
Page 3

>       (iv) The applicant is a spouse or child of an alien currently
>       eligible to be a TPS registrant.

Pursuant to section 244(c)(2)(B)(i) of the Act and the related regulations in 8 C.F.R. § 244.4(a), an alien shall not be eligible for temporary protected status if the Attorney General [now the Secretary of the Department of Homeland Security (the Secretary)] finds that the alien has been convicted of any felony or two or more misdemeanors committed in the United States.

8 C.F.R. § 244.1 defines "felony" and "misdemeanor:"

> *Felony* means a crime committed in the United States punishable by imprisonment for a term of more than one year, regardless of the term such alien actually served, if any, except when the offense is defined by the State as a misdemeanor, and the sentence actually imposed is one year or less regardless of the term such alien actually served. Under this exception for purposes of section 244 of the Act, the crime shall be treated as a misdemeanor.

> *Misdemeanor* means a crime committed in the United States, either:

>> (1) Punishable by imprisonment for a term of one year or less, regardless of the term such alien actually served, if any, or

>> (2) A crime treated as a misdemeanor under the term "felony" of this section.

> For purposes of this definition, any crime punishable by imprisonment for a maximum term of five days or less shall not be considered a felony or misdemeanor.

The record reflects that on May 9, 1999, in Nashua, New Hampshire, the applicant was arrested and charged with Count 1, driving while intoxicated - 2nd offense (DWI-2nd); Count 2, disobeying police officer; and Count 3, forgery. On August 12, 1999, the applicant was convicted of Count 1. A "nolle prossed" was entered as to Counts 2 and 3.

The applicant was convicted of DWI-2nd offense, a misdemeanor. Although the applicant was requested, in a notice of intent to deny dated August 21, 2003, to submit the final court dispositions of every, and any, charges against him, he failed to submit the court disposition for his conviction of DWI, first offense. A conviction of two or more misdemeanors committed in the United States would render the applicant ineligible for TPS, pursuant to section 244(c)(2)(B)(i) of the Act and the related regulations in 8 C.F.R. § 244.4(a).

Despite counsel's assertion, on appeal, that he timely filed the requested court documents, there is no evidence in the record that he submitted the court dispositions of all of the applicant's arrests, including his first DWI arrest. Accordingly, the director's decision to deny the TPS application will be affirmed.

The burden of proof is upon the applicant to establish that he meets the requirements enumerated above and is otherwise eligible under the provisions of section 244 of the Act. The applicant has failed to meet this burden. Accordingly, the appeal will be dismissed.

**ORDER:**     The appeal is dismissed.

062504/AAOEDO01/N/94382519.CRM

